UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| VILLAGE ON THE BAYOU, INC | * | CIVIL ACTION NO: 3:21-CV-03644 |
| | * | |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| | * | |
| STATE FARM FIRE & CASUALTY | * | MAG. JUDGE KAYLA D. MCCLUSKY |
| INSURANCE CO. | * | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE
REPORT AND TESTIMONY OF DEFENDANT'S EXPERT, DAVID A. BELL.**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Village on the Bayou, Inc. ("VOTB"), and submits its Memorandum in Support of its Motion to Exclude the Report and Testimony of Defendant's Expert, David A. Bell, as follows:

I.      **INTRODUCTION AND BACKGROUND**

VOTB is the lawful owner and maintenance company required to operate, maintain, and keep in working order all commercial and residential property encompassed at 515 Lincoln Road, Monroe, Louisiana 71203 (the "Property").[1] The Property is a condominium complex consisting of ten different property locations and associated buildings (together, the "Buildings"), as defined by the State Farm policy, policy number 98-BR-D158-9.

On January 10, 2020, the National Weather Service documented a line of severe thunderstorms that impacted the Monroe, Louisiana area and included violent wind, hail, and rain.[2] This weather event caused considerable damages to all of the residential and common buildings, including damages to the roofing system and consequential water intrusion into the property as well as

---

[1] R. Doc. 1-1.
[2] *Id.*

damages to the wall systems and other interior losses.[3] This weather event also caused substantial

damages to the covered parking areas located adjacent to the buildings.[4] VOTB timely reported

these losses to State Farm who assigned same claim number 18-04N7-70F which forms the basis

of this litigation.[5]

David A. Bell of KWA Engineering & Building Science, Co., Inc., was retained by State

Farm to perform a site visit and complete an evaluation of the roofing systems.[6] This report was

completed on July 26, 2022.[7] Plaintiff's files this Motion to Exclude the Report and Testimony of

Mr. Bell and its argument is simply, Mr. Bell's inspection and report are based on an incorrect

date(s) of loss as is further detailed below.

## II.  **LAW AND ARGUMENT**

### A. **Admissibility of Expert Testimony**

The admissibility of expert testimony is governed by the Federal Rule of Evidence 702,

which requires:  A witness who is qualified as an expert by knowledge, skill, experience, training

or education may testify in the form of an opinion or otherwise if: (1) The expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or

to determine a fact in issue; (2) The testimony is based on sufficient facts or data; (3) The testimony

is the product of reliable principles and methods; and (4) The expert has reliably applied the

principles and methods to the facts of the case.[8]

---

[3] *Id*.
[4] *Id*.
[5] *Id*.
[6] See attached, Deposition of David A. Bell, attached hereto as Exhibit A, 41:15 – 42:9. Also, see attached, Cover Letter and Written Report of David A. Bell, attached hereto as Exhibit B.
[7] See Exhibit B.
[8] *See* La. C.E. Art. 702; *see also, Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).

"To qualify as an 'expert,' 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'"[9] Additionally, Rule 702 states that an "expert" may be qualified based on "knowledge, skill, experience, training, or education."[10] "A district court should refuse to allow an 'expert' witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[11]  However, "Rule 702 does not mandate that an 'expert' be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[12]

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether 'expert' testimony is admissible under Rule 702."[13] Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant."[14]

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.[15] The reliability inquiry must remain flexible, however, as "not

---

[9] *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).
[10] *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)  (discussing witnesses whose expertise is based purely on experience).
[11] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).
[12] *Id.*; *see Daubert*, 509 U.S. at 596.
[13] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).
[14] *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.
[15] *Burleson*, 393 F.3d at 584.

every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."[16] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702."[17]

With respect to determining the relevancy of an "expert's" testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the 'expert's' proposed opinion would assist the trier of fact to understand or determine a fact in issue."[18]"There is no more certain test for determining when 'experts' may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."[19]

B. **The Report and Testimony of Mr. Bell should be excluded as irrelevant and unreliable as both relate to a weather event he reports as having occurred on dates over eight months prior to the actual date of loss reported to and acknowledged by State Farm.**

Subsequent to multiple inspection, David A. Bell of KWA Engineering & Building Science Company, Inc., was retained by State Farm to perform a site visit, complete an evaluation of the roofing systems, and author a report of his findings.[20] The issue herein is not that of qualification

---

[16] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006)("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'").

[17] *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

[18] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

[19] *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003)(quoting *Fed. R. Evid.* 702 advisory committee's note).

[20] See Exhibit A, 41:15 – 42:9. *See also,* Exhibit B.

or methodology, it is simply that Mr. Bell conducted his evaluation based on an entirely incorrect date of loss.

The date of loss at issue herein is January 10, 2020. At no point has that date been a point of contention. In fact, even if the issue were limited to the period of litigation only, not only was that date included in VOTB's Petition,[21] but also acknowledged as being the date of loss by State Farm in multiple pleadings including its Notice of Removal[22] and both of its oppositions to VOTB's Motions to Compel.[23] Further, multiple documents created by State Farm and provided to Mr. Bell to be utilized in the creation of his report indicate the date of loss as having been January 10, 2020.[24]

Despite this, Mr. Bell's Report reflects the dates of loss for which he was evaluating the Property to be either April 13, 2019, or April 29, 2019; those dates are used interchangeably throughout the report.[25] Mr. Bell was later deposed on October 19, 2021,[26] wherein counsel for VOTB repeatedly attempted to clarify the issue. Specifically:

Q:    Tell me about your assignment here. When I say here, I mean in the Village on the Bayou Case.

A:    I was asked to perform a site visit and evaluation of the roof systems and offer opinions regarding the estimates that were furnished for the repair of reported damage.

Q:    That was related to a weather event reported to have occurred on April 29, 2019?

---

[21] R. Doc. 1-1.
[22] R. Doc. 1.
[23] R. Doc. 19 and R. Doc. 25.
[24] See attached, Excerpt of State Farm's March 26, 2020, Structural Damage Claim Policy, included in Mr. Bell's Report as Exhibit 12 – State Farm Estimate Change Report, attached hereto as Exhibit C. Also see attached, Excerpt of State Farm's July 13, 2020, Estimate included in Mr. Bell's Report as Exhibit 12 – State Farm Estimate Change Report, attached hereto as Exhibit D.
[25] See Exhibit B.
[26] See attached, the Notice of Deposition for David Bell, attached hereto as Exhibit E.

**A:**   I did note that there was a discrepancy in my report. I believe the date of loss is April 13, 2019. I may have picked up April 29th off of a different document, but it looks like as though April 13th is the date of loss as referenced in the cover letter to my report.[27]

*****

**Q:**   Okay, did you evaluate the property for damages that were caused by any loss date other than April 13th, 2019?

**A:**   I evaluated the properties to determine whether or not, in my opinion, there was damage caused by hail and/or wind to the properties and reviewed the estimates that were provided by others specific to the April 13th, 2019, date of loss.

**Q:**   Okay. So I understand you evaluated and related to that particular date of loss. I'm just asking if you actually evaluated the loss for any other loss date?

**A:**   I evaluated reported weather events as is described in my report.[28]

*****

**Q:**   Okay. And we talked a little bit about the date of loss before, and you said that somehow some dates got mixed up in the shuffle, but the actual date of loss that you inspected for would have been April 13, 2019, correct?

**A:**   That's my understanding. Yes, sir.[29]

*****

**Q:**   Okay. The State Farm estimate you have as marked, listing a date of loss as January 10th, 2020, and you said the cover letter dated April 15, 2021, lists a date of loss as April 13, 2019. Do you have any explanation for that disparity?

**A:**   No, sir.[30]

*****

As is made clear from Mr. Bell's deposition testimony, the content of his report was based on an evaluation of a weather event he believed occurred over eight months prior to the actual date of loss. Any information from Mr. Bell's report or his testimony related to same

---

[27] See Exhibit A, Bell 41:15 – 42:9.
[28] See Exhibit A, Bell 42:23 – 43:11
[29] See Exhibit A, Bell 64:3 – 8.
[30] See Exhibit A, Bell 128:2 – 8.

Page **6** of **7**

based on that fictitious event are irrelevant to the damages sustained by VOTB on the date of

loss at issue herein. What would have been relevant, however, would have been an evaluation of

the damages caused by the January 10, 2020, weather event. For those same reasons, the report,

and any testimony regarding same, is unreliable and would lead to jury confusion.

   **WHEREFORE**, Plaintiff, Village on the Bayou, respectfully requests that this Court

exclude the report and testimony of Mr. David Bell in its entirety from the trial in this matter.

                                        **RESPECTFULLY SUBMITTED:**

                                        ___**/s/ Trent J. Moss**_____
                                        Galen M. Hair, La. Bar. No. 32865
                                        Trent J. Moss, La. Bar No. 37406
                                        **HAIR SHUNNARAH TRIAL**
                                        **ATTORNEYS, LLC.**
                                        **d/b/a INSURANCE CLAIM HQ**
                                        **d/b/a INSURANCE CLAIM**
                                        **LAWYERS, INC.**
                                        3540 S. I-10 Service Rd., West, Suite 300
                                        Metairie, Louisiana 70001
                                        Telephone: 504.684.5200
                                        Facsimile: 504.613.6351
                                        moss@hairshunnarah.com
                                        hair@hairshunnarah.com

                        **CERTIFICATE OF SERVICE**

   I hereby certify that on December 6, 2022, I have electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all

counsel of record.

                        _____/s/ Trent J. Moss_____
                              **Trent J. Moss**